Judge Gkeen,
delivered the opinion of the Court.*
This is an action of replevin, in which the defendant pleaded property in himself, without avowry. Upon this plea, the plaintiff took issue. The jury found the issue for the plaintiff, and assessed his damages to $20; for which the Court gave judgment, and the defendant appealed. The slaves, which are the subject of the action, are stated in the declaration to exceed $2000 in value. The object of this appeal is to reverse this judgment, and finally to obtain a judgment de retorno habendo. The subject in controversy is the title to the slaves, and the damages. The judgment in replevin, upon a plea of property in the defendant pleaded in Court, determines the right of the property. 6 Bac. J3.br. 65. This case, therefore, falls within the jurisdiction of this Court.
On the part of the appellant, various objections are urged to the proceedings and judgment in this case. First; that no writ of replevin lay at common law, hut in cases of goods distrained; and for this proposition, a passage in Blacksl one’s Commentaries, to that effect, is relied upon. This question has occurred in the Supreme Court of New York, in Pangburn v. Partridge, 7 Johns. 140. Mr. Justice Van Ness had, at the Circuit, determined in that case, that the right of property could not be determined in the action of replevin; and was probably led to this decision by the passage in Blackstone’s Commentaries, 3 vol. 145. The same Judge afterwards pronounced the unanimous opinion of the Court, that, at the common law, a writ of replevin was a proper remedy in all, cases of goods unlawfully taken. The Court, in that case, ascertained that this rule had been admitted from the year books, down to a very modern period, and traced it through the year books, the abridgments of Rolle and Brooke, and the elementary writings of Butter, Gilbert and Corny ns, and in the judicial *452 decisions in Mason v. Dixon, Jones’ Reports, 173, and Bishop v. Montague, Cro. Eliz. 824. In Shannon v. Shannon, 1 Sch. & Lefr. 324, Lord Redesdale declared, that replevin lay in case of any taking; but that a taking was indispensably necessary to found the writ. He observed, “the writ is founded on a taking, and the right which the party, from whom the goods are taken, has to have them restored to him, until the question of title to the goods is determined.” The passage from Blackstone^s Commentaries was cited; and Lord Bedesdale remarked, “ I am always sorry to hear Mr. Justice Blackstone’s Commentaries cited as authority. He would have been sorry himself to hear the book so cited. He did not consider it as such:”
In addition to the satisfactory examination of this question, in the cases already mentioned, it may be further observed, that the writ of replevin as given in Fitzheriert, and the declaration as given in the books of forms, contain no suggestion that the property was taken as a distress; which would have been indispensably necessary, if that fact were the only foundation for a writ of replevin. The forms of writs and pleadings have always been considered as evidence of what the law is. Again; property in the defendant is a good plea in bar in replevin, without avowry. Vin. Abr. Repl. C. a. pl. 3; 6 Bac. Abr. 65. Upon such a plea and issue thereupon, it can never appear in the record, that the goods were taken as a distress. The consequence would be, if a replevin lay only in cases of distress, that upon such a plea, even if found for the plaintiff, he could have no judgment; and judgment, in all such cases, ought to be arrested, since the gist of the action would not appear in the record. To this general rule of the common law, that replevin lay in all cases of goods taken, there were, however, exceptions. As where they were taken under process from a Court of record, or by virtue of the directions of á statute. Gilb. Rep. 154; 6 Bac. Abr. 55. The case cited from Coke Litt. 145, b. as an-exception to *453 a supposed general rule, that replevin only lies for goods distrained, is an exception to the rule, that replevin lies only for goods taken. For, when the mesne lord puts his beasts in the pound, in lieu of those of his tenant distrained, as he may do, then he has a right to a replevin, although his beasts were never taken. The writ of replevin was a more beneficial remedy than the action of detinue; for, besides that in the latter action, the plaintiff must at all events be deprived of the possession of his property until it can be recovered by suit, the action may fail to have the effect of restoring the specific property, although the plaintiff may be found to be entitled to it. Whereas, the replevin immediately restored the possession of the property to him from whom it was taken, upon the legal presumption that the property belonged to the person in possession, and discouraged parties from redressing themselves by their own act, or invading the rights of others.
It is however insisted, that although, at the common law, as it existed in England, such a case as this was proper for a writ of replevin, yet that the Legislature have declared, by the act of 1823, that so much of the common law as provided for the action of replevin, was never in force here. That act is in these words: “Whereas doubts exist whether the action of replevin, as provided for by the common law of England, is not still in force in this Commonwealth; to remove which doubts, Be it enacted, That the action of replevin shall be construed to exist in no other cases, than shall arise under and by virtue of the act, entitled an act, reducing into one act, the several acts for the better securing the payment of rents, and preventing the fraudulent practices of tenants, and to regulate the practice of suing out and prosecuting writs of replevin; any law, custom or usage, to the contrary, notwithstanding.” The terms of this statute admit, that at common law, the writ of replevin existed in other cases than those of distresses for rent. The common law was always our law, so far as it was applicable to the circumstances of the country; and I can see *454 nothing in the circumstances of Virginia, which made the Writ of replevin, in its full extent, less proper here than in England. Indeed, the Legislature, in the several revisáis of our statutes up to that of 1819, have invariably recognized the existence of the common law writ of replevin, in cases other than those of distresses for rent, by limiting “ all actions of replevin for taking away goods and chattels,” to be prosecuted within five years. This expression of our act is copied from 21 James Í, and cannot apply to cases of goods taken as a distress for rent; for in such cases, the statutes provide, that if not replevied within ten days after the distress and notice thereof, the goods shall be sold. There seems to be no ground, upon which the doubt mentioned in the act of 1823, existed, except that the writ of replevin, in all other cases than distresses for rent, was almost entirely disused.
1 The action, in this case was brought, and the judgment rendered, before the passing of the act of 1823. The question, whether it be competent or not, to the Legislature, by a retrospective law, to deprive an individual of a right already vested and consummated under former laws, (a question which it is not necessary to discuss in this case) cannot arise, until it appears that the law was clearly intended to have that effect. The just and natural operation of every law is prospective; otherwise, it would have the character rather of an adjudication than an enactment. The act in question, has not necessarily a retrospective operation; and therefore, ought to be construed to have a prospective operation only. We are called upon to say, whether the judgment in question was right or erroneous, according to the laws in force when it was rendered.
In the next place, it is objected that the plaintiff failed to give bond and security in due time. This objection does not go to the destruction of the writ. By the common law, no pledges were required before the emanation of the writ. The sheriff was bound to require of the plaintiff plegii de prosequendo, and, by statute in England, *455 plegii de retorno habendo; and our statute only requires security, as a preliminary to the issuing of the writ, in the ease of distresses for rent. If the goods were delivered to the plaintiff by the sheriff, without pledges, or without suffieient pledges, he was responsible in a separate action to the defendant; but it did not affect the validity of the writ; or if they remained, upon the return of the writ, in the hands of the sheriff, or of the defendant, and the sheriff had not taken pledges, the Court, upon motion, might take the proper security, and according to the circumstances of the case, order the defendant to gage deliverance or not, as might be proper. 6 Bac. Abr. 57; Vin. Abr. "Replevin,” A. passim; Ib. U. pl. 4.
In the third plaeeyit is insisted that the Instruction of the Court excepted to, was erroneous, and that upon the facts stated in the bill of exceptions, the plaintiff had not an exclusive title to the slaves in question. The case appears to he this. The slaves in question belonged to Thomas Cowles, who died intestate, in 1786, leaving a widow and several children, of whom Nathaniel Cowles, (under whom the plaintiff claimed,) was the eldest son, and heir at law, of Thomas, and also administered on his estate: that Nathaniel Cowles, at the time of the taking, (the proof of which was properly adjudged to be fit to be submitted to the jury,) was dead; and the defendant, Vaiden, was administrator de bonis non of Thomas Cowles, and the husband of one of his daughters, and took the slaves as administrator de bonis non of T. Cowles, and in right of his wife: that the slaves in question were assigned to the widow of T. Cowles, and upon her death, Nathaniel Cowles took possession of them, and hired them out for more than five years, as administrator of Thomas Cowles.. It is admitted, that as the law was at the time of Thomas Coivles’ death, the heir at law was entitled to all the slaves of an intestate, including those assigned to the widow for dower, and was accountable to the younger children only for their respective proportions of the value of the slaves, *456 other than those assigned as dower; to the reversion of whichj he was entitled without account. This was the effect of the act of 1705, then in force. But it is insisted, that having no right as administrator, to the possession of the slaves, after they were assigned to the widow for dower, his taking possession of them in that character, and holding them in that character for more than 5 years, barred his title as heir, by force of the statute of limitations; and that the administrator de bonis non was entitled to them as assets of the estate, distributable to all the family. If a stranger had been the administrator of T. Cowles, and upon the death of the widow, had taken possession of the slaves professedly in his character of administrator, his possession could not have been considered as adverse to the heir at law, the sole distributee as the law then was; and the statute of limitations would no more have protected him against that distributee, than against all who are the distributees according to subsequent laws. If it would protect him against all demands, upon the ground that his possession was tortious and adverse, then his 5 years possession would enure to give him an individual right. So, if N. Cowles’ possession was as administrator, he was a trustee for himself; or if it enured to his individual benefit, it confirms, rather than impeaches, his original title. I think the instruction excepted to, was right. ->
The proceedings in this case have been very irregular. To the first declaration, the defendant filed a special demurrer, and two pleas alledging the property not to be in the plaintiff. The plaintiff joined in demurrer, and replied, concluding to the country. No issue in fact was joined. After argument of the demurrer, the plaintiff, by leave, withdrew his joinder in demurrer, and amended his declaration in the point specified in the special demurrer; anu thereupon, the record states that issues were joined, and a jury empanelled, who found a verdict. No further notice was taken of the demurrer. I think the demurrer to the first declaration must be considered as abandoned, and the *457 jileas io the first declaration, as insisted on by the defendanl, as pleas to the second. It is clear from the finding of the jury, that the issues upon those pleas were the issues tried.
Upon the face of the record, as it stands, there are several defects. The declaration neither slates property or possession in the plaintiff, nor that the defendant took the property, either from the plaintiff, or any one else; and the defendant has pleaded several pleas, which is not allowed to the defendant in replevin by our statute. These errors, however-, are cured by the statute of Jeofails, of 1819, which provides, that “no judgment, after the verdict of twelve men, shall be stayed or reversed for any defect whatsoever in the declaration or pleading, which might have been taken advantage of by demurrer, and which shall not have been so taken advantage of.” Upon the whole, the judgment should ire affirmed.

 The Pbesidekt, absent,.